KENTUCKY BAR ASSOCIATION,
Movant,

v.

Della TARPINIAN, Respondent.

No. 2010–SC–000180–KB.

Supreme Court of Kentucky.

April 21, 2011.

## OPINION AND ORDER

On motion of the Kentucky Bar Association (KBA), pursuant to Supreme Court Rule (SCR) 3.460(1), this Court issued an Order to Show Cause against Respondent Delia Tarpinian, ordering her to show cause why she should not be held in contempt of this Court for continuing to engage in the unauthorized practice of law following a January 27, 2003 cease and desist letter from the KBA. Respondent filed a response to this Court's order, denying that she had engaged in the unauthorized practice of law. Accordingly, pursuant to SCR 3.460(3), this Court referred

the matter to a Special Commissioner for a hearing. The Special Commissioner conducted a hearing and filed a report with this Court, which included findings of fact, conclusions of law, and recommendations. We now consider that report and the Special Commissioner's recommendations.

The Special Commissioner made the following findings of fact, which we now adopt:[1]

> The Respondent, Delia Tarpinian, operated a business in Owensboro, Kentucky, entitled Legal Docs, LLC. In exchange for payment of fees, she offers to draft legal pleadings and documents for customers who have provided her with answers to a questionnaire that she developed. The Respondent does not sell blank legal form documents to customers. She has operated this business since 2001. She is not now, nor has she ever been licensed to practice law in the Commonwealth of Kentucky or any other jurisdiction. She received and reviewed the KBA letter dated January 27, 2003, styled **Warning Letter Regarding the Unauthorized Practice of Law**[.] She also acknowledged receipt of the KBA letter dated June 4, 2001, advising that the KBA had initiated an investigation regarding the unauthorized practice of law. She also acknowledged receipt of a letter from the KBA dated December 4, 2009, listing specific cases wherein it is alleged that she prepared legal documents without having any right to do so.
>
> The Respondent testified that she did not understand the letters from the KBA, and characterized them as confusing to her. She said she consulted with her attorney, Galen Clark, upon receipt of said letters. She consulted with Mr. Clark regarding the 2003 KBA cease and desist letter. Mr. Clark testified he had reviewed a KBA letter and was then of the opinion that she was not involved in the unauthorized practice of law since she only provided a form typing service, did not hold herself out as an attorney and did not give legal advice. However, he denied having ever seen the KBA 2003 cease and desist letter. Nevertheless, on January 30, 2003, the Respondent replied to the Executive Director of the KBA regarding the KBA letter of January 27, 2003. Her reply appears to be copied to a newspaper and television reporter and refers to "false and unfounded allegations". When asked about the KBA 2003 cease and desist letter, she responded saying, "I really don't read the letters from the Bar".
>
> The Respondent's advertisements and "disclaimer" notify customers that no attorneys provide services for Legal Docs, LLC and that Legal Docs, LLC does not give legal advice. Exhibit R 7.5 describes the entity as a "Legal Document Preparation Service". Exhibit R 10 describes the entity as a "Legal Document Service".

The Special Commissioner found that Respondent had "prepared and drafted pleadings, motions, orders and other documents" in nine uncontested divorce cases in Daviess Circuit Court[2] and one domes-

---

1. Citations to the record have been omitted.

2. *Shelly Wilhite v. Miles Wilhite*, No. 09–CI–00032 (Daviess Cir. Ct., Div. I); *Peggy S. Roller v. Timothy D. Roller*, No. 09–CI–00184 (Daviess Cir. Ct., Div. II); *Kimberly R. Lindsey v. Joseph F. Lindsey*, No. 09–CI–00552 (Daviess Cir. Ct., Div. I); *Kevin J. Howard v. June M. Howard*, No. 09–CI–01003 (Daviess Cir. Ct., Div. II); *Jerry L. Hayden v. Donna M. Hayden*, No. 09–CI–01070 (Daviess Cir. Ct., Div. I); *Penny R. May Callaway v. Gordon C. Callaway*, No. 09–CI–00888 (Daviess Cir. Ct., Div. I); *Jeffrey D. Westerfield v. Roxy M. Westerfield*, No. 09–CI–00821 (Daviess Cir. Ct., Div. I); *Brandy Espinosa–Fuentes v. Bruno Espinosa–Fuentes*, No. 09–CI–00093 (Daviess

tic case in Daviess District Court.[3] The parties stipulated that "drafted" would be defined as "having taken information in response to a questionnaire and typing that information in pleading form." Additionally, the Special Commissioner found that Respondent completed a Child Support Worksheet and calculated child support obligations in one case in Hancock Circuit Court,[4] and that she prepared a Contract and Bond for Deed, which was filed in the Daviess County Clerk's Office and recorded in a deed book.[5] The Special Commissioner found that Respondent "knew these documents were intended by her customers to achieve or further objectives impacting their legal rights, and she was paid money for drafting these documents."

The Special Commissioner continued:

Delia Tarpinian testified that she created the questionnaire distributed to divorcing customers when she first started her business, and that the questionnaire required basic information that she determined necessary to type divorce forms. She agreed that her general intention in creating the questionnaire was to have customers provide information which would produce documents to be filed in court, and that satisfied the legal requirements of a dissolution proceeding.

It is noted that the questionnaire contains no question with respect to the participation of the parties in other litigation regarding child custody issues. Nevertheless, the Wilhite petition at paragraph 9 asserts no other custodial litigation; as does the Roller petition

and the Espinosa–Fuentes petition. It is noted that the questionnaire makes no inquiry with respect to the debts of the parties; yet the Property Settlement Agreements prepared by the Respondent make provisions for payment of debts. It is noted that the questionnaire makes no inquiry regarding the marital/non-marital character of assets; yet the Property Settlement Agreements prepared by the Respondent state that each party has had their non-marital property restored to them.

The questionnaire developed by the Respondent has no inquiry related to payment of health insurance for parties' children, and yet the Respondent attributed health insurance obligations in specific amounts when she calculated Child Support Worksheets. The same is true with respect to apportionment between the parties regarding the payment of medical expenses for minor children. The Property Settlement Agreements contain apportionment provisions. The questionnaire does not mention the Parents Education Clinic, but the court documents do so.

Given the very simple questions asked in the questionnaire provided by the Respondent, and the absence of other questions where provisions are ultimately included in court documents, it is clear that the Respondent is interviewing and consulting with her customers regarding these provisions. She is offering counsel and advice on legal matters. Her testimony to the contrary lacks credibility.

---

Cir. Ct., Div. I); *Joyce M. Acey v. David G. Acey*, No. 09–CI–00916 (Daviess Cir. Ct., Div. I).

**3.** *Kara Baldwin v. Christopher Vasquez*, No. 05–D–00286–002 (Daviess Dist. Ct.).

**4.** *Charity M. Wilson v. Michael G. Wilson*, No. 08–CI–00090 (Hancock Cir. Ct.).

**5.** Daviess County Clerk's Office, Deed Book 864, page 735 (filed June 9, 2009).

Several of the Respondent's customers filed Petitions to Reopen Dissolution of Marriage Proceeding and Enter Decree for Dissolution of Marriage after the Court had denied entry of decree. These petitions are legally sophisticated pleadings, citing case law and court rules. They evidence legal knowledge well beyond the legal knowledge of an ordinary person. Each of these petitions are signed by the litigants, *pro se*. These *pro se* litigants did not create these petitions. Ms. Callaway stated that attorney Galen Clark prepared her petition and that she signed it in Delia Tarpinian's office. The Haydens believe the petition was prepared by Delia Tarpinian and written by attorney Galen Clark. Ms. Espinosa–Fuentes stated that "Delia" prepared the petition. Then she stated that Galen Clark prepared the petition. Ms. Howard advised the trial judge that "Delia's lawyer" wrote the petition.

This effort to mislead the trial court and the Respondent's participation in that effort is evidence of her lack of regard for the rules designed to protect litigants from those persons not legally competent or qualified to counsel, advise and advocate on matters of law.

■ SCR 3.460 provides the procedure to be followed when the KBA believes that a person is engaging in the unauthorized practice of law in Kentucky. In this case, pursuant to SCR 3.460(1), the KBA initiated an investigation, and ultimately sent Respondent a warning letter "requesting that the unauthorized practice of law be discontinued." *Id.* SCR 3.460(1) further states that, if future violations occur, the KBA may move this Court to "issue a rule against the alleged offender to show cause why he/she should not be held in contempt for unauthorized practice of law." A person who continues to engage in the unauthorized practice of law following a KBA directive to discontinue may be held in contempt of this Court. *See Kentucky Bar Ass'n v. Brooks,* 173 S.W.3d 617 (Ky. 2005). SCR 3.020 defines the practice of law as "any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services."

■ The Special Commissioner's findings of fact in this case clearly establish that Respondent continued to engage in the unauthorized practice of law after the KBA's January 27, 2003 warning letter. Although Respondent characterizes her business as a "typing service," it is clear from the record that Respondent did far more than type information supplied by her customers. In *Kentucky Bar Association v. Legal Alternatives, Inc.,* this Court found that an Oregon corporation engaged in the unauthorized practice of law by preparing legal documents, despite a disclaimer that the corporation did not employ attorneys and did not provide legal advice. 792 S.W.2d 368 (Ky.1990). Similarly, in *Kentucky Bar Association v. Brooks,* this Court held that the respondent engaged in the unauthorized practice of law by assisting customers in filling out United States Bankruptcy Court forms following a cease and desist letter from the KBA. 173 S.W.3d 617. Respondent's conduct is similar to the conduct in these cases.[6]

---

**6.** *See also* KENTUCKY BAR ASSOCIATION, UNAUTHORIZED PRACTICE OF LAW OPINION KBA U–63 (2006), *available at* http://www.kybar.org/documents/up/kba_u–63.pdf (opining that a non-attorney business entity or corporation, whose business is the creation, preparation, or typing of legal forms and documents, engages in the unauthorized practice of law

After the filing of the Special Commissioner's report, this Court "may permit the filing of briefs by the parties or may summarily dispose of the matter and shall enter such order as may be appropriate." SCR 3.460(4). In this case, the Special Commissioner's findings of fact are supported by the record, and her conclusions of law are sound. We see no reason to require additional briefing by the parties, and choose to summarily dispose of this matter, as permitted by SCR 3.460(4).

■ The Special Commissioner concluded that Respondent profited from the noted violations in the approximate amount of $2,635.00 in the year 2009. Given that Respondent's conduct was similar to the conduct of the corporation in *Legal Alternatives* (for which this Court imposed a $5,000.00 fine), and given that Respondent has operated her business continuously since receiving the KBA directive in 2003, the Special Commissioner recommended the imposition of a $5,000.00 fine. We agree that the continuous nature of Respondent's unauthorized practice of law makes this fine appropriate.

On motion of the KBA, the Special Commissioner amended her recommendations, and recommended that the fine be made payable to the KBA to defer its costs in prosecuting this matter. We believe that a fine for contempt is more appropriately directed to the General Fund of the Commonwealth. However, pursuant to SCR 3.460(5), Respondent is liable for costs in this matter, and costs may be paid to the KBA upon proper motion.

Accordingly, IT IS HEREBY ORDERED that:

1. Pursuant to SCR 3.460, Respondent Delia Tarpinian is found to be in contempt of this Court for engaging in the unauthorized practice of law in violation of the Kentucky Bar Association's January 27, 2003 directive.

2. Respondent is ordered not to engage in the unauthorized practice of law in the future.

3. Respondent is sanctioned for her contempt in the amount of Five Thousand Dollars ($5,000.00), to be paid to the Clerk of the Supreme Court for remittance to the General Fund of the Commonwealth within thirty (30) days of the date of the entry of this Order.

4. Pursuant to SCR 3.460(5), Respondent is responsible for costs or fees due or owing in connection with this action, if any, upon appropriate motion by the Kentucky Bar Association.

All sitting. All concur.

ENTERED: April 21, 2011.

/s/ John D. Minton, Jr.
 Chief Justice

when it assists in the identification of the purchaser's legal goal and advises the purchaser on the proper choice and utilization of forms to achieve that goal).